Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On 4 May 1996, the date of plaintiff's alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. Hartford Accident and Indemnity Company was the workers' compensation insurance carrier on the risk.
4. A set of plaintiff's medical records, marked as Stipulated Exhibit Number Two, is admitted into evidence.
5. A letter from Laney Real Estate Company dated 27 May 1997 is admitted into evidence.
6. The affidavit of Mark Hicks, verifying the wages plaintiff earned from Powersigns and Graphics, is admitted into evidence.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was thirty-eight years old. After graduating from high school in 1976, he attended the University of North Carolina at Wilmington from which received an undergraduate degree in history. On or about 15 February 1997, plaintiff became employed by Laney Real Estate Company as a salesman.
2. Plaintiff began his employment with defendant-employer on 22 March 1996. Defendant-employer was a wholesale produce business, selling fresh fruits and vegetables to restaurants. Plaintiff was employed by defendant-employer as its operations manager. In this position plaintiff was responsible for maintaining quality control, taking produce orders from customers, coordinating deliveries to customers, receiving produce shipments and various other duties.
3. In 1994, plaintiff had a herniated disc at L4-L5. As a result of his herniated disc, plaintiff underwent surgery by Dr. Jon K. Miller on 23 August 1994 during which he performed a laminotomy and disc excision. Plaintiff continued seeking treatment from Dr. Miller through October 1994.
4. At the time that plaintiff began working for defendant-employer, he informed his supervisor, Jeff Stokely, that he was unable to perform any heavy lifting. Mr. Stokely responded that plaintiff was not to lift weights greater than he was able to lift. Nonetheless, some of plaintiff's regular duties required that he engage in lifting activities, including frequent lifting of boxes or cases of vegetables weighing up to fifty pounds.
5. On 4 May 1996, plaintiff and another employee, Corey Sandlin, were unloading a truck shipment of produce. Part of the shipment consisted of a pallet containing boxes of broccoli. The boxes were fifteen inches wide and eighteen inches long. Each box weighed approximately thirty pounds. The boxes were stacked four wide and five deep. The boxes were stacked to a height of seven feet. Plaintiff and Mr. Sandlin were using a pallet jack to unload the shipment. To remove the pallet of broccoli, plaintiff pulled on the pallet jack handle while Mr. Sandlin pushed on the boxes of broccoli. When the pallet jack struck the ramp between the truck and the loading dock, some of the boxes of broccoli fell from the pallet.
6. Plaintiff testified that approximately one-half of the broccoli boxes fell and struck him, knocking him to the concrete loading dock floor. He further testified that after falling he began experiencing low back pain that extended into his left leg. Mr. Sandlin, who was working with plaintiff, saw the broccoli boxes fall, but he did not see the boxes strike plaintiff and knock him to the floor.
7. Although Mr. Sandlin was unable to see plaintiff from Mr. Sandlin's side of the pallet because the boxes were stacked seven or eight feet high, he would have seen him if half the boxes fell off the pallet, as plaintiff testified. He also would have been able to see plaintiff once the boxes started falling and plaintiff moved toward the side of the pallet to try to keep the boxes from falling, as plaintiff testified. Mr. Sandlin would also have viewed plaintiff lying on the concrete loading dock floor, if the incident occurred as plaintiff testified. Given all these opportunities for Mr. Sandlin to observe the incident, the Commission finds that it is unlikely that an event as described by plaintiff occurred without Mr. Sandlin becoming aware of it.
8. After the boxes fell, plaintiff continued working and completed his scheduled work day. Mr. Stokely was present at defendant-employer's place of business on 4 May 1996, but plaintiff did not report to Mr. Stokely that he was experiencing back and leg pain after being knocked to the floor by the broccoli boxes. Although defendant-employer did not have workers' compensation injury notices posted about the workplace on 4 May 1996, plaintiff knew that he was supposed to report any on the job injury to his supervisor. Plaintiff continued working as scheduled through 12 May 1996. On 13 May 1996, plaintiff reported to work in the morning and took orders for produce. As a result of pain, plaintiff left work and presented to Dr. Miller's office.
9. Upon presenting to Dr. Miller's office, plaintiff was provided with and asked to complete a "Low Back/Neck Pain Questionnaire". On the questionnaire, plaintiff indicated that he was experiencing back and leg pain. He further indicated that these symptoms began "suddenly" and "at work". The questionnaire asked whether the symptoms began "during or after lifting/bending", "when I fell", "at the time of the accident", "after the accident" or "for no apparent reason". Rather than indicate on the form that his symptoms began "when I fell", plaintiff indicated that his symptoms began "during or after lifting/bending".
10. After completing the questionnaire, plaintiff spoke to a medical assistant. Plaintiff informed the medical assistant that he knew of no re-injury that he had sustained. Plaintiff was then interviewed and examined by Armando Gonzalez, Dr. Miller's physician's assistant. Plaintiff told Mr. Gonzalez that he began experiencing increased pain in his low back and left leg on 7 May 1996. Plaintiff denied that there had been any specific incident precipitating his pain. After additional inquiry by Mr. Gonzalez, plaintiff stated that he worked for a produce company and that he lifted considerable amounts of vegetables. Mr. Gonzalez prescribed medications, directed plaintiff to perform some mild stretching exercises and to return for re-evaluation in one week.
11. Plaintiff did not return to work for defendant-employer until 16 May 1996. Plaintiff worked the entire day of 16 May 1996 and a portion of 17 May 1996. Plaintiff did not work for defendant-employer after 17 May 1996. Prior to leaving work on 17 May 1996, plaintiff informed Mr. Stokely that he believed he had injured his back while lifting boxes of produce. Plaintiff did not relate that his back injury resulted from any specific incident.
12. On 17 May 1996, plaintiff completed an Industrial Commission Form 18, Notice of Accident to Employer. On this form, plaintiff stated that he had sustained a back injury on 4 May 1996 which was caused by "lifting and pulling on produce". Prior to 17 May 1996, plaintiff had not informed defendants, or any employee of defendants, that he had sustained an injury while working on 4 May 1996.
13. Plaintiff returned to Dr. Miller's office on 20 May 1996. On that date, plaintiff's condition had not significantly improved and an MRI was ordered to determine whether plaintiff had a recurrent herniated disc. Plaintiff was first evaluated by Dr. Miller on 14 June 1996. On that date, plaintiff informed Dr. Miller that he sustained an injury at work on 4 May 1996 when boxes of broccoli fell on him.
14. Plaintiff's back and leg pain were caused by a recurrent herniated disc at L4-L5. Plaintiff underwent surgery on 18 July 1996, during which Dr. Miller excised the herniated disc and performed a fusion utilizing an iliac crest bone graft.
15. The Deputy Commissioner who had the opportunity to observe the witnesses during their testimony, did not accept as credible plaintiff's testimony that he was struck and knocked to the floor by falling broccoli boxes on 4 May 1996. This testimony is inconsistent with his written statements on his Form 18 and the "Low Back/Neck Pain Questionnaire". This testimony is also inconsistent with the oral statements plaintiff made to Mr. Gonzalez, the medical assistant and Mr. Stokely. Mr. Sandlin, the only other person present at the time of plaintiff's alleged injury, was in a position to observe, but did not observe the incident described by plaintiff in his testimony.
16. The Full Commission declines to reverse the Deputy Commissioner's credibility determination. Since the Commission does not accept plaintiff's testimony as credible, the evidence of record is insufficient to prove by its greater weight that plaintiff sustained an injury by accident or as a result of a specific traumatic incident of the work assigned.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to no compensation under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs, except that defendants shall pay Mr. Gonzalez $100.00 as an expert witness fee.
This the ___ day of November 1998.
 S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________________ RENÉE RIGGSBEE COMMISSIONER
DISSENTING:
S/ _____________________ THOMAS J. BOLCH COMMISSIONER